UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 22-14361-nmc |
|  | . | Chapter 11 |
| A CAB, SERIES, L.L.C., | . |  |
|  | . |  |
| Debtor. | . |  |
| . . . . . . . . . . . . . . . . | . |  |
| MICHAEL MURRAY, Individually | . | Adv. No. 22-01163-nmc |
| and on behalf of others | . |  |
| similarly situated, | . |  |
| MICHAEL RENO, Individually | . |  |
| and on behalf of others | . |  |
| similarly situated, | . |  |
|  | . |  |
| Plaintiffs, | . |  |
|  | . |  |
| v. | . |  |
|  | . |  |
| A CAB TAXI SERVICES LLC, | . | 300 Las Vegas Blvd. South |
| A CAB, LLC, and | . | Las Vegas, NV 89101 |
| CREIGHTON J. NADY, | . |  |
|  | . | Thursday, March 23, 2023 |
| Defendants. | . | 9:48 a.m. |
| . . . . . . . . . . . . . . . . | . |  |

TRANSCRIPT OF SCHEDULING CONFERENCE RE:  ADVERSARY CASE
22-01163 MICHAEL MURRAY, MICHAEL RENO AGAINST A CAB TAXI
SERVICES LLC ET AL [1];
MOTION FOR REMAND WITH CERTIFICATE OF SERVICE FILED BY RUTHANN
DEVEREAUX-GONZALEZ ON BEHALF OF LEON GREENBERG, ESQ. [9];
BEFORE THE HONORABLE NATALIE M. COX
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES CONTINUED.

Audio Operator:          Benji Rawling, Remote ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

| | |
|---|---|
| For A Cab, Series L.L.C.: | Larson & Zirzow, LLC<br>By:  MATTHEW C. ZIRZOW, ESQ.<br>850 E. Bonneville Ave.<br>Las Vegas, NV  89101<br>(702) 382-1170 |
| For Leon Greenberg Prof. Corp.: | Leon Greenberg Professional Corporation<br>By:  LEON GREENBERG, ESQ.<br>     RUTHANN DEVEREAUX-GONZALEZ, ESQ. (Telephonically)<br>1811 S. Rainbow Blvd.<br>Las Vegas, NV  89146<br>(702) 383-6085<br><br>Law Offices of Gabriel Del Virginia<br>By:  GABRIEL DEL VIRGINIA, ESQ.<br>30 Wall Street, 12th Floor<br>New York, NY  10005<br>(212) 371-5478 |
| Subchapter V Trustee: | NATHAN F. SMITH, ESQ.<br>2112 Business Center Drive<br>Irvine, CA 92612<br>(949) 252-9400 |
| For the U.S. Trustee: | Office of the United States Trustee<br>By:  EDWARD MCDONALD, ESQ.<br>300 Las Vegas Boulevard South #4300<br>Las Vegas, NV 89101<br>(702) 388-6600 |

(Proceedings commence at 9:48 a.m.)

THE COURT:  The next four matters in the adversary case of Murray, et al. versus A Cab Taxi Services, and also in the bankruptcy case of A Cab Taxi Services.  The adversary number is 22-01163 and the bankruptcy number is 22-14361.  May we have appearances, please?

MR. ZIRZOW:  Good morning, Your Honor.  This is Matt Zirzow with Larson & Zirzow, counsel to the debtor.

MR. GREENBERG:  Good morning, Your Honor.  This is Leon Greenberg for Murray case creditors.  I have with me today Mr. Del Virginia and Ms. Gonzalez.

MR. DEL VIRGINIA:  Good morning, Your Honor.  Gabe Del Virginia pro hac vice.  Thank you.

MR. SMITH:  And good morning, Your Honor.  This is Nathan Smith, the Subchapter V Trustee.

MR. MCDONALD:  Edward McDonald, Department of Justice for the U.S. Trustee, Your Honor.  Appearing in the bankruptcy matters.  Thank you.

THE COURT:  All right.  Good morning.  So I guess, Mr. Zirzow, I just asked for kind of an update on where we are. I know we just had a hearing a couple of days ago, but if you could just tell me where things are at today.

MR. ZIRZOW:  Certainly, Your Honor.  So when last we were here before you on Tuesday, the Court directed the parties and/or me to do several things.  First of all, file a renewed

or amended procedures motion, which we have done resetting the Chapter 11 plan confirmation hearing in this case for the May 17 and 18 days. And then you also requested that the parties prepare and confer regarding a discovery plan or plan confirmation. I did prepare a draft of that.

I did circulate it to Mr. Greenberg. We did discuss the matter. However, he was not willing to agree to what I proposed. In particular, I believe his objection is just that he believes the confirmation hearing should be bumped out, which I think the Court has already addressed. Otherwise, we did file a discovery plan as Docket 132, you know, in the main case. It did only have my signature, just so we're clear. But again, Mr. Greenberg and I certainly did meet and confer to try and discuss various matters.

Just to highlight a few items in the discovery plan. So given the confirmation hearings set for mid-May, it had a discovery cut off at the end of April. It expedited the deadlines for discovery to 20 days. And as to the converted subpoena from the Murray creditors that we dealt with on Tuesday, that actually required responses before the end of the month. So in about a week.

So it expedited those even more to really get this process rolling. And it set other dates, deadline, to the extent there would be experts, one week before the confirmation hearing required a list of witnesses and exhibits, five days

before trial for motions in limine, and then requesting a pretrial conference about one week before the confirmation hearing.

So from the debtor's perspective, Your Honor, it's some pretty standard fare as far as a discovery plan, including expedited dates.  And I honestly expect most, if not all discovery to be incoming to the debtor, not by the debtor going out to creditors.  So if anybody is prejudiced by the expedited deadline, it's the debtor, because the debtor is going to have to be the one that's responding to all the discovery.

So I thought it was a pretty neutral discovery plan, but Mr. Greenberg, I think he's just looking for more time for the confirmation hearing.  And quite candidly, the debtor's response is, well, you've already had two months, and now the judge has given you another month and a half.  We think that's more than enough time to get to a confirmation hearing with an appropriate level of discovery.

Again, this isn't a state court trial.  This is a focused matter involving Chapter 11 plan confirmation.  And we believe that it's now going to be three-and-a-half months of discovery is more than adequate for a Subchapter V, Chapter 11 plan of this size and magnitude.  So we did file the discovery plan, and it was only signed by us, just to be clear.  And so that's our status from the debtor side, debtor's perspective, with respect to the Chapter 11.

I would just add, Your Honor, one more thing.  I would like to get some structure in place with a discovery plan.  Just so again, we know the ground rules heading into the confirmation hearing.  And in fact, if anything, I pushed all the deadlines as far as I could to allow for a maximum amount of time for discovery by requiring witness lists and exhibits, you know, a week before and motions in limine five or six days before and expediting discovery.  I was really trying to allow for a maximum amount of discovery here.  So I just don't really think there's any prejudice.  I think it's an appropriate plan and should be approved.

THE COURT:  All right.

Mr. Greenberg, I'll let you respond to that.

MR. GREENBERG:  Your Honor, I'd like to just compliment Mr. Zirzow and conferred with me yesterday and reassure, Your Honor, as you represented to me a couple of days ago, I have not dealt with Mr. Zirzow before, that Mr. Zirzow does try to exercise his obligations to confer and to deal with counsel and to be professional.  I had some difficulty in respect to the prior matters, which are before the Court on Tuesday in our communications, but that is history.

He did listen to my concerns, Your Honor.  He did make some small adjustment to the schedule.  Those concerns still are here.  Your Honor, I would point out that we don't actually have any production from the debtor.  Mr. Zirzow has

agreed to move that up to March 31st.  But under the schedule, all discovery needs to close by the 28th, including depositions, including follow-up requests, which would have a 20-day turnaround.  So, you know, effectively, I have maybe a week after getting that production to put out follow-up requests that may come from that production.  So we have concerns.

Your Honor, I don't know that the Court wants to actually address the issue of changing the schedule. Mr. Zirzow did pledge to me yesterday that if we run into difficulty with the schedule, he will certainly try to work with me to cooperatively adjust it, perhaps with the Court's agreement.  So I don't actually want to impose on Your Honor to change the schedule right now.

In respect to the confirmation hearing, we went through this on Tuesday.  We do have concerns.  I was not able to get back to Mr. Zirzow to sort of finalize our discussion because Mr. Del Virginia was unavailable.  He's on East Coast time.  We were getting late in the day.  But if Your Honor is going to order this, I understand, and we will -- all counsel clearly is going to make an effort here to make things work appropriately.  If for some reason we run into issues, we may be back in two or three weeks sometime next month to address those issues with Your Honor.  That's, I guess, the best I can tell the Court about it.

THE COURT:  Sure.  I understand.  And obviously, that's what the Court's here for.  If there is a dispute that the parties can't resolve themselves, I'm always hopeful, though.  Would much prefer that the parties do that without court intervention.  But I understand litigation.  I do want to keep firm right now the confirmation hearing dates, and I do think it's appropriate to enter this discovery plan.

Again, I understand that there may be some tight deadlines here.  And if there's some, you know, good faith efforts put into trying to resolve those and the parties can't resolve it, I will.  So we'll deal with it that way.  So I guess that part is resolved.  And I do appreciate the parties meeting and conferring before today and trying to work this out.

So we have -- let's see in the main case, in the bankruptcy case, we have the application for an order expanding the powers of the Subchapter V Trustee.  I'd like to start there.  Is there anything before we start that that needs to be brought to my attention?

MR. GREENBERG:  This is Leon Greenberg, Your Honor.  As movant, I'm not aware of any additional developments that are not discussed in the reply which was filed on Tuesday.  Hopefully Your Honor has had an opportunity to review that.

THE COURT:  I have.  All right, then.  All right.  Well, let's go forward.

Mr. Greenberg, if you want to go ahead and proceed on your motion, you may.

MR. GREENBERG: Yes. Thank you, Your Honor. I think that it is not disputed by anybody here that if action is not taken in the state court in respect to the fraudulent conveyance action by April 22nd in respect to securing this jurisdiction over Laurie Nady as a defendant, there could be a very significant problem with the prosecution of those claims, which is why we brought this to Your Honor.

If this was a situation where we could simply defer dealing with this until, you know, sometime in the future when the Court was more generally, you know, reviewing the proposed plan and the debtor's, you know, situation, we would have. But for that reason, we needed to bring it now. And since action needs to be taken now, we've tried to craft a approach here that is as limited as possible, that preserves this important asset for the estate for the benefit of the creditors.

And that being understood, the fundamental problem here, Your Honor, is that there's an inherent and really indisputable conflict of interest here between the debtor having control over the fraudulent conveyance claims and their fiduciary duty to the creditors as debtor in possession here. It's somewhat unusual that you would have a fiduciary who's, in fact, been found in contempt, which the debtor was.

The debtor is under an order for $94,000 in contempt

that was found in the state court proceedings.  They've never purged themselves of that contempt finding.  And that is discussed in the reply.  You have the discussion from Judge Cory at page 5 of the reply about his findings on this.  But even setting that aside, Your Honor, Your Honor doesn't need me to explain the problem here.

The debtor is, in fact, controlled by Mr. Nady and his family.  They are also the defendants in the fraudulent conveyance case.  Laurie Nady has not come forward to accept jurisdiction and resolve the immediate problem in the fraudulent conveyance case.  And of course, she has no obligation to do that.  And the debtor is a separate legal entity.  They don't control her.

But given the relationship of the parties here, it's just not, you know, feasible to imagine the debtor here, you know, taking action to preserve the asset.  Which is why, again, we tried to craft this release within the narrowest confines possible in consultation with Mr. Smith, who did discuss the issues with us and agreed that he was supportive of the limited request we were making here, that he would act to report and preserve and investigate the asset and advise the Court on this.

And in respect to this issue of, you know, the merits, well, Your Honor, we have this report from the Special Master, which is in the record.  And the Special Master does

document this removal of $1.9 million during this three-year period from the debtor. So it's not as though we're proceeding just completely in the dark here. And, you know, the Special Master found those withdrawals of equity at that time. This was in 2019, shortly after the judgment was entered in 2018.

We're putting the debtor in a very precarious position in terms of being able to pay the judgment. I understand that's not conclusive, Your Honor. Your Honor isn't here to make any determination about the merits. I know in the opposition there are various arguments presented about the merits of the claims, actually the supposed lack of merits. But there is actually nothing presented except the assertions that the claims have no merits.

Which brings us to this issue of potentially alternative relief, which is that if the claims don't have merit, then the estate shouldn't be burdened with them. We are accused, Your Honor, and I'm trying to not use such harsh language here, in bringing this motion of trying to offload these claims to burden the estate and to draft the trustee in sort of our arm here to pursue them for our personal benefit, the Murray creditors, that is.

And of course, that's not, you know, correct in the sense that if the claims are successful, they benefit all the creditors, although conceitedly, we are the three-quarter creditor here or more with an interest, but we're willing to

assume the responsibility and the burden of prosecution here, Your Honor.  You know, we don't have to burden the estate, and this is discussed there are alternative reliefs that are possible that the Court could fashion here that would not burden the estate in any fashion.  That's discussed at pages 11 and 12 of my reply.

I don't really want to just repeat myself of what's in the reply, Your Honor.  I don't think that's a productive use of your time.  I would certainly like to answer the Court's questions.  I'd like to have a little time to respond to whatever argument is made by the debtor.

THE COURT:  I have a question for you.  In the paragraph just above the conclusion in the motion where you're describing the relief that you're requesting.

MR. GREENBERG:  Yes, Your Honor.

THE COURT:  And it would be having the fraudulent -- the Chapter V's Trustee's powers expanded to include investigation of the fraudulent conveyance action.  And it also mentioned preserved.  That having the fraudulent conveyance asset further investigated and preserved.  What are you requesting with respect to the preservation of this?

MR. GREENBERG:  Well, Your Honor, to be candid, and I must be candid with the Court.  We do need some sort of action in the state court case to take care of this April 22nd deadline, which is threatening the asset.  So it would be

essentially a limited grant of authority to the trustee to appear in that case solely for the purpose of authorizing and conducting the publication that's necessary against Laurie Nady to secure jurisdiction.  Hopefully, we can impress upon the state court to stay that case.  I've repeatedly tried to do that.

I have another conference with the state court judge in two weeks.  He's declined to stay the case, so it would be limited to just doing that at this point.  He would not proceed with any prosecution or any other action in respect to the case, just simply to preserve it.  So he would be granted some authority, very limited authority, in respect to that particular necessary issue.  If he had to do something else to preserve the asset, I suppose, you know, that could be specifically brought to Your Honor to keep it under a very sort of tight control.

I understand that the Court is not necessarily inclined to want to, you know, broadly expand his powers to be going down that path.  And Mr. Smith can speak for himself.  In my dialogue with him, he was not contemplating that was my understanding either.  You know, my concern is to preserve this.  I believe Mr. Smith presumably shares that concern, but also wants to investigate and develop more information about this.  I am hopeful we can do that, actually, in the discovery that we're seeking in the Chapter 11 case.

I don't know that we're going to have to do that in respect to the -- in the state court action.  Obviously, we can bring non-parties in, in the Chapter 11, to give testimony or whatever.  You know, we got to get started with all that.  So it'd be a little speculative to say how we're going to develop the information or what we're going to get on that, but I would obviously work under his direction.

We're certainly willing to undertake the cost of the publication against Ms. Nady and do any work that would be involved with that to minimize any burden on the estate.  So hopefully that answers the Court's question as to that particular issue.

THE COURT:  Well, it does.  It's what I suspected you were going to say.  And what concerns me is that I'm not sure the Bankruptcy Code authorizes the Subchapter V Trustee to act in that role of preserving it by appearing in the courts, and I don't know, you know, requesting a stay or whatever that may be.  I'm comfortable that the Subchapter V sections do allow the expansion of his powers to investigate, to essentially act as an examiner, essentially.

That I'm comfortable with.  Not so much without further briefing, would I be comfortable with ordering any type of preservation actions on the part of the Subchapter V Trustee.  But I do want to hear from, of course, Mr. Zirzow. And I will hear from Mr. Smith.

I guess, Mr. Smith, since we're on the topic of your powers, why don't you go ahead and speak to this if you'd like.

MR. SMITH:  Your Honor, I think that it would be valuable to have an objective party investigate these claims and then file a statement with the Court.  With regard to expanding my authority to preserve the claims, I agree with Your Honor that I think that issue may require further briefing.  I know that 1183(b)(2) provides that I shall perform certain duties if ordered by the Court and refers to 1106.  And 1106 provides for an investigation regarding acts, conducts, assets, liabilities, and financial condition of the debtor and to file a statement regarding that investigation.

So I think that, Your Honor, in my opinion, would be appropriate under the circumstances, just based on the nature of these claims to have an objective investigation performed, but with regard to preservation, I agree with Your Honor.

THE COURT:  All right.  Thank you, Mr. Smith.

Mr. Zirzow?

MR. ZIRZOW:  Yes, Your Honor.  I think I can really help here and really remove what I would say is manufactured emergency here.  First of all, let me just say there's absolutely no danger and it is very much disputed that these claims could disappear come April.  That's just false.  These claims are property of the bankruptcy estate.  They are protected by the automatic stay.  Any removal or dissipation of

them by a state court, that order would be void and unenforceable. Plain and simple.

Now, if we need a protective stipulation, which I would be willing to enter into, that says that the claims are preserved, I'd be more than willing to do that. So this whole premise of this motion that we have to do something that's going to be -- something's going to happen come April is just false. The state protects them and I'm willing to enter into a stipulation to provide for the preservation of them. And basically an order of this Court saying, hey, these claims are preserved. And if the state court is out there violating the stay, I guess I can understand the consternation with that.

But suffice it to say, for purposes of the bankruptcy and the preservation of these -- again, we dispute the allegations, obviously, but the claims themselves, I would agree to that. So there's no need to have Mr. Smith do anything more or Mr. Greenberg, if the debtor is willing to preserve them.

I'm not trying to run out the clock by dragging my feet here and having those claims dismissed by a state court. Far from it. Frankly, we have a state court who's unilaterally acting that's probably in violation of the stay. So again, Your Honor, it's a very simple matter to remove any allegation of manufactured prejudice here by just saying the claims are property of the estate, which Mr. Greenberg even agrees with,

as he has to, and they are preserved for the benefit of the estate.

And, you know, unfortunately, we do have a state court acting independently, and that's I will tell you a concern with a lot of what's going on today, including the motion of remand.  Maybe the state court doesn't appreciate that these are property of the estate and thus need to be preserved until some disposition of them can happen.

So the whole idea that these are going to go away is just false.  They're protected by the stay.  And I'm willing to stipulate, you know, on top of that, that they are stayed, that they're property of the estate.  And thus, even if a state court does enter some order unilaterally purporting to dictate that, you know, the state court can dismiss claims that belong to the estate, that is void and ineffective.  So that's an easy one to take care of.

Let's get to the actual relief, though, in this, which is rather extraordinary.  I've never seen it before, but Subchapter V is only about three years old now, and it's seeking to empower the Subchapter V Trustee to conduct an investigation that the Murray creditors are already doing.  They're already doing it.  They already have pending discovery.

We've already actually assembled most of the discovery responsive to these allegations, and the only evidence, you know, they have is a two- or three-page state

court master report that says, yeah, the debtor paid out this amount for these three years.  There's no indication from the master report as to anything improper.  The only indication is that money went out.  Well, as I've already indicated in multiple pleadings, the debtor will show that this was a payment of salaries, okay?  And that's what the discovery will show.

So based upon that threadbare evidence, they want you to launch into a rather extraordinary remedy that is already under investigation.  Why can't Mr. Greenberg proceed?  And he's going to get documents responsive to this in a week on the 31st.  Proceed with that.  And if Mr. Smith really believes he also needs to be involved, he can get the same discovery and they can both participate in a deposition of Mr. Nady and whatever other confirmation discovery which is already in process and proceed.  Why do we need to do anything more than that?

So the claims are preserved.  They're already being investigated, thus this motion is really unnecessary.  And then in the reply, for the first time, without any reference in the motion, the Murray creditors seek a grant of derivative standing.  Well, first of all, Your Honor, I would submit you should not consider a new matter if it raised for the first time in a reply.

Second, Your Honor, I'm sure --

THE COURT:  Mr. Zirzow.  Mr. Zirzow, you don't even need to go into it.  I agree.  So that both sides know, I am not -- anything that's raised as a new affirmative request that would normally require any motion notice I'm not going to consider because it's in the reply.  It's not fair.  It doesn't provide due process.  So you don't need to go into that.

MR. ZIRZOW:  Great.  Your Honor, so not to be repetitive of the opposition, but the basic position is Mr. Greenberg has submitted a substantial amount of document requests that we are very much wading through the discovery.  He's already started that process.  Let that process play through.  If he still believes there is actual evidence, then he could bring a derivative standing motion or whatever other relief he believes is appropriate.  And I'm sure we will also, frankly, deal with this issue in confirmation.

He's already raised the issue of well, you know, you value those Chapter V causes of action at zero in your liquidation analysis.  Therefore, you're not paying -- you don't satisfy the best interest of creditors.  1129(a)(7), I think it is.  So all these issues, they're already lined up.  They're already lined up in discovery, they're already lined up in the pleadings.  They're already, frankly, really, in my opinion, set for the confirmation hearing at mid-May.  So why are we doing this extraordinary relief of empowering a third party, you know, the trustee, to investigate things.

Mr. Greenberg should carry his own water.  You know, he likes to tout that he's 80 or 90 percent of the creditor base.  Well, then, fine.  You prove your case and show why the debtor's position is wrong and why these are valid claims.  You have to show actual evidence more than just a Special Master report that makes the general finding that the debtor paid its employees.  I mean, that's not enough.

You've got to show that these were improper transfers.  That they were done for no value.  And again, the debtor will submit evidence at the appropriate time as to why that's incorrect and false and that the salaries, in fact, if anything, were rather modest, and payment of normal tax obligations and things like that.  So we'll get to that.

And this process is already underway.  There's just no need for a separate, you know, deputizing of the Subchapter V Trustee into some kind of independent counsel to investigate these.  He can participate in the investigation already underway by Mr. Greenberg, quite frankly.  So it's just unnecessary in this case.

You know, I'm concerned also with the cost.  Obviously, unlike Mr. Greenberg's claims, Mr. Smith, his fees and costs are an administrative claim in the case and do impose a burden on the debtor.  And so for all those reasons, Your Honor, we do request that this kind of extraordinary relief is unnecessary at this juncture.  There's plenty of protections

and processes in place willing to stipulate to preservation to avoid that.

I think it's a red herring anyway because of the stay such that there's no prejudice in denial of this motion and allow the normal machinations that you'd expect in a case, including discovery on plan confirmation and arguing about these matters at the confirmation hearing to proceed.  Thank you.

THE COURT:  All right.  Thank you.

All right.  Mr. Greenberg, just a brief response.

MR. GREENBERG:  Your Honor, we certainly have no objection to having the status quo frozen, so to speak, to preserve the claim and to remove our concern regarding the expiration of the claim against Laurie Nady.  Because the debtor was not a party to the fraudulent conveyance case when the petition was filed.  They weren't a defendant, they weren't a party.  Otherwise there was no automatic stay.  It is true that as an operation of law, the prosecution right of that has now passed to the debtor's estate.

If this Court has the authority to order a stipulation of the parties based on that authority of the debtor to simply stay that case, which will, you know, stop the clock running against Laurie Nady as a defendant in terms of this jurisdictional issue, we don't have an objection to that.  This has not been discussed previously.

And I must confess, Your Honor, I am not well-versed in the jurisdictional question that I'm raising to the Court. My co-counsel, Mr. Del Virginia, probably is.  He probably could address that more fully.  But I just want to stress to the Court we want to cooperate with the Court.

Our motivation here was simply to preserve the asset at this point.  That was our overriding obligation not to burden the estate, not to force any additional burden on the Court.  We certainly are willing to also brief this issue of giving the trustee these preservation powers we were discussing earlier, Your Honor.

THE COURT:  Well, so if the parties were to -- if I were to continue this, to give the parties time to actually address this proposed, you know, stay preservation, whatever you want to call it, if that would be helpful.

And Mr. Greenberg, if that means that you would no longer be pursuing the request to have the expansion of the trustee's powers, then I think it's worthwhile to continue this out for a few days to allow that to happen.  Is that what you were saying?  That if this is the agreement that you think it is, that you could possibly just withdraw the rest of the request?

MR. GREENBERG:  Your Honor, the alternative resolution here that Mr. Zirzow was proposing makes much sense as a matter of judicial economy and economy and interest of the

parties.  I was raising a jurisdictional question, okay, a process question, which, again, I confess a lack of intimate knowledge with.

Your Honor, I am not generally a bankruptcy practitioner.  I am a pretty experienced litigator.  So I do not know the contours of the jurisdictional question there.  Do we, in fact -- does Your Honor, in fact, have the power to so order the stipulation of the parties that will, in fact, be binding to stay that state court proceeding when the debtor, in fact, is not a party to it, but does now have standing and control over the prosecution as an asset of this estate?  I don't know the answer to that, Your Honor.

THE COURT:  And --

MR. ZIRZOW:  Your Honor -- I'm sorry, Your Honor.  Your Honor, if I may.  I think there's much of what Your Honor says and I may say what all the parties have said.  So I think Your Honor's proffered suggestion that at least the whole matter be carried for a few days while we do confer and perhaps even do some quick research would be well taken.  Just given the date, it's the 23rd today, so we do have a little bit of time.  It is teed up before Your Honor.

So if there is no resolution and there's a reason that we do have to proceed thereafter, obviously, Your Honor, the procedural rules would contemplate an expedited return to this, but I think it would be best for us to reconnoiter and

address it both collectively and with all the parties.

THE COURT:  And I think that sounds appropriate as well.  I was looking at Ms. Rawling.  Is the 30th a good date?  That's one week.

THE COURTROOM DEPUTY:  Yes, Your Honor.

MR. DEL VIRGINIA:  That works for me here in New York.  Yeah.

MR. GREENBERG:  Yeah, that's fine for creditors, Your Honor.

THE COURT:  Mr. Zirzow?  That would be March 30th.

MR. ZIRZOW:  Yes, that works for the debtor, too.  Thank you.

THE COURT:  All right.  So we'll go ahead and continue this particular matter to that date and time.  Preferably if the parties don't -- I guess, importantly, I'm not going to allow -- well, I'm thinking out loud here.  If the parties don't agree and you are going to go forward with the motion, and the creditors are going forward with the motion.  I would like additional briefing on the issue of the preservation portion of the request.  That may or may not be something that needs to be done at the same time.

I think if we went forward on the motion and the Court were -- and I'm not just saying I am, I'm just saying -- and the Court were to grant the relief at least as to the expansion of the powers with respect to like the investigation

and the writing up of the investigation, I think there still would be time to address the preservation issue.

So thinking through that out loud, I think I am not going to ask that there be any additional briefing.  The parties can discuss this potential resolution to this matter.  If you don't resolve it, we'll plan on going forward on the 30th as is with the papers that are currently on file.

MR. GREENBERG:  Yes, Your Honor.

MR. ZIRZOW:  Very fine, Your Honor.

MR. MCDONALD:  Your Honor, this is Edward McDonald.  If there's additional briefing on something other than the expansion of the powers under 1183(b)(2) and 1106(a)(3) and (4), something other than that, would other parties be able to submit briefs as well, Your Honor?

THE COURT:  Yes, Mr. McDonald.  I will let the U.S. Trustee's office brief that as well.  In fact, I would welcome that.

MR. MCDONALD:  Thank you, Your Honor.

THE COURT:  All right.  So let me get back to the rest of the matters on my calendar here.  So let's see.  So that gets us now -- I think we've covered everything in the main case.  Let's go to the adversary where we have the motion to remand and -- let's see, one second.  Okay.  We also have the scheduling conference.

So Mr. Greenberg, if you want to proceed on the

motion to remand. I'll tell the parties I have read the papers, so you don't have to reiterate everything that's stated therein, but I will let you go ahead and argue. So go ahead.

MR. GREENBERG: Thank you, Your Honor. And I don't want to take up the Court's time reiterating what's in the papers. Fundamentally, Your Honor, this is a matter confined to your discretion, and I cannot tell the Court that there are, you know, absolute guideposts here in respect to what the Court should or shouldn't do regarding a remand in this situation.

But I would stress to the Court that there is no threat to the administration of the estate by the state court making all of the decisions and conducting all the activities that the state court would conduct if this case had remained in the state court. And fundamentally, the only item here that I think is really raised by the debtor regarding how the state court might somehow have interfered with the administration of the estate is the question of these appeal bond funds.

And as I have explained to the Court, it's very clear that these appeal bond funds are not property of the estate. There is no contrary authority. I mean, the authorities that have looked at this have agreed in this situation when these funds are put up and an appeal has run its course and it's been a remand, it's gone back downstairs to the trial court and then the debtor, you know, subsequently files for relief, those funds have passed. They've passed out of the debtor's hands.

They're not part of the bankruptcy estate.

And there is no concern to this Court.  There is no concern to the debtor's proposed plan of reorganization.  So there is no contrary authority, and the debtor doesn't claim there's contrary authority to that principle.  Your Honor, what the debtor claims is really two things or three things, which is that somehow these funds were seized on a judgment execution, and therefore should be returned to the debtor.  And that's really incorrect in the sense that these funds were on the verge of being distributed to my clients because they were seized on a judgment execution.

And the debtor came into the state court and persuaded the state court to put them into a bond.  Got the state court to order that with the debtor's consent at the debtor's urging, to forestall further judgment execution while the appeal was pending.

So clearly they were put into an appeal bond.  They did not remain just in limbo as an execution on the debtor's funds, you know, shortly prior to the petition filing which would be subject to a return, you know, to the debtor's estate.  And in fact, they added $100,000 to these funds.  So $100,000 of these funds never came from any kind of seizure from the debtor, and they ignore that issue in their papers, Your Honor.  They don't even address that.

The other argument they raise is that somehow this

provision of the state law NRS 31.291, somehow constitutes just a lien right by the Murray creditors to these funds, and that they aren't really -- the debtor was somehow never dispossessed of ownership of them prior to the petition.  And that's really a misconstruction of the statute.  The statute deals with financial institutions and how financial institutions are to process garnishments on accounts when judgment executions come in.  So it's just not accurate.  And again this is discussed at page 5 of the reply, Your Honor.

This third argument they raise is this question of how, because the state court, when it put these funds into the bond, did not simply authorize me to distribute them to my clients when the appeal was over, which would be the normal course, obviously, but directed that I had to get authority from the state court to effect any distribution.

And Your Honor, this is like an interpleader situation.  I mean, I have, you know, 600 claimants who have interest in these funds.  So the state court had to retain continuing jurisdiction to oversee any distribution of these bond funds once the appeal was resolved and they were ripe for distribution.

Again, this is not a question of a distribution of the estate's property, and to the extent that these funds are distributed by the state court, they're not going to complicate the administration.  I mean, they will reduce the claims of the

unsecured creditors who get those payments so the debtor will get the full benefit of those distributions.  So there really is no issue.

The only other issue that's raised to Your Honor is the question of this alter ego claim.  And again, this is discussed in the papers.  I think it's very clear from the ACON case and the Ninth Circuit authority and the nature of these claims which do not allege -- they're not alleging that the corporation somehow doesn't exist or has been, you know, a Ponzi scheme or something of that sort.

These are very personal individual claims to my clients regarding these minimum wage law violations and an intentional act by Mr. Nady to violate the minimum wage laws for his own personal benefit at the expense of my clients, not at the expense of any other creditors or any other people dealing with the debtor.

Therefore, they're not property of the bankruptcy estate under the Ninth Circuit's holding.  I could go on, Your Honor.  I don't want to take up the Court's time reiterating what is in the papers.  Perhaps the Court has questions.  I'd certainly like an opportunity to respond further after you hear from the debtor.

THE COURT:  Well, one of the issues that concerns me is that it's not just the dispute regarding the appeal bond and the disbursement of that, but it also includes a request

regarding a receiver and the imposition of a receivership, which I find very problematic here.

MR. GREENBERG:  Your Honor --

THE COURT:  I'm delegating the overseeing of this bankruptcy case to a receiver in state court and I don't want to do it through a remand of this case.  Can you address that?

MR. GREENBERG:  My apologies, Your Honor.  Absolutely not.  There is no receiver request.  The state court can't appoint a receiver.  I have no intention of asking for that.  I think it is clear from the minutes that were put in the moving papers that when the bankruptcy petition was filed, the state court indicated that the case was stayed for all purposes, and the only thing that the state court judge was going to consider was the disposition of these bond funds.  So absolutely not, Your Honor.

All the state court can do at this point is dispose of those bond funds, perhaps, you know, proceed with the alter ego claims against Mr. Nady because he's not a party to the bankruptcy case and it can liquidate my claims. I mean, I have claims for attorney's fees and costs that it had never made rulings on which do need to be determined.  But obviously there can't be any enforcement of the judgment.

If the state court makes those determinations, they have to come back to this case, to this Court for administration, for disposition as part of the claims in the

bankruptcy case.  So I apologize, Your Honor, if that was not made clear.

THE COURT:  No, I just wanted to make sure that was the case.  It wasn't clear to me.  But you've now cleared it up.  What is the harm if the Court were to continue this to the confirmation date?  It's coming up pretty quickly, May 17th, and have this issue, because the plan does contemplate that there will be a resolution of this issue with respect to the appeal bond.  I mean I understand that it's just delayed for your client.  There's been lots of delays for quite a long time it looks like, in this case.  But is that the only emergency, if you will.

MR. GREENBERG:  Your Honor, I don't want to use the term "emergency."  Okay?  I don't believe that's appropriate. I need to be deferential to Your Honor's deliberative process here.  Okay?  Your Honor has many matters to deal with.  I don't think this case is a typical Sub V case, to say the least.  In fact, this litigation is not a typical litigation.

If Your Honor gets any sense of how long it's been pending, the multiple appeals that have been happening in the state court, the contempt findings, all sorts of things that have gone on.  Your Honor, fundamentally, if these funds are not estate property, and they clearly are not, there is no reason that this should be delayed.

The case should be remanded to the state court.  The

state court should deal with this, should figure out what to do with those funds.  The debtor's plan proposes to distribute those funds to all general unsecured creditors.  This is a significant infirmity in the plan.  We're not hearing objections to the plan at this point because those funds don't belong to all the creditors.  They belong just to my group of creditors, although admittedly, that's 80 percent of the unsecured creditors.

So Your Honor, would Your Honor be wrong to defer this into the future?  I cannot say Your Honor would be wrong. I want to be supportive of Your Honor's deliberative process. I want Your Honor to think things through, to feel comfortable with the decisions you're making.  So I don't want to press the Court.  I don't want to tell the Court this is an emergency.  I mean, look, my clients are owed unpaid minimum wages dating back to 2010.

I think it is somewhat of an outrage that this matter has gone on so long.  But that's got nothing to do with Your Honor.  This case has been before this Court for a very brief period of time.  Okay.  There's been a lot of delays in the state court proceedings.  So Your Honor needs to exercise your judgment as you believe is appropriate.  That's not my job.  If it was to my determination, Your Honor, I would urge Your Honor to make the determination today, remand this case, because there is nothing here that Your Honor should be burdened with

deciding.  It just makes no sense.

Your Honor is busy enough to retain jurisdiction here to make decisions over purely questions of state law, which, clearly the state court is better vested to do in determining what my fees are, in determining if Mr. Nady, in fact, is liable as an alter ego pursuant to state law.  Figuring out how these appeal bond monies should be distributed, given the state court's granting of class action certification under state law, and so forth, Your Honor.

THE COURT:  All right.  Thank you.

Mr. Zirzow, as I understand the papers, you know, and as I recall from just previous hearings and whatnot, the debtor isn't opposed to remand, it's more of a timing issue, correct?

MR. ZIRZOW:   That's fair, Your Honor.  Under the plan by design, I thought the plan was a pretty elegant solution for this issue, quite frankly.  I guess that isn't shared.  Hello?

THE COURT:  We're hearing something in the background.  If you could please mute your line if you're not speaking.

Go ahead, Mr. Zirzow.

MR. ZIRZOW:   Thank you, Your Honor.  Your Honor, I agree.  I thought the plan provided, I could say, a pretty elegant solution to this issue to avoid litigation on these kind of matters by ultimately providing a limited remand.

Because the plan, by design, basically says, hey, we have this large group of creditors.  There's an appeal pending before Nevada Supreme Court.  That appeal should play through, and we're going to park money until that decision, which, you know, the Nevada Supreme Court, unfortunately, is not in a hurry to decide things.  That may take a year or two, but we're going to park money, we're going to fund it into a reserve.  In the meantime, these monies are going to stay in Mr. Greenberg's trust account until we know the Nevada Supreme Court tells us, you know, if there's a reversal.

We're going to go back and see what the state court does.  If there's an affirmance, then the plan contemplates that there would start being distributions, including from these funds.  So I thought the plan, you know, just tries to give guidance to everybody.  It also provides a limited remand to basically allow that to happen.  That way, the state court isn't worried about, oh, am I ruling on claims and whether they're allowed in the bankruptcy?  Am I disposing of property of the estate in violation of the stay?  So I thought the plan really provides a nice solution to all of the issues that Mr. Greenberg is raising.

And let me just say what those are.  You know, he first talks about, oh, well, I have additional claims for attorney's fees I'm owed.  And, well, actually, ten days after he filed this motion to remand, he filed a proof of claim in

this bankruptcy case, Claim Number 16.  He filed it on December -- or excuse me, February 20th, that asserted these claims. They're now proofs of claim at the bankruptcy.  Why are we going to have a state court -- why are we remanding to a state court to decide whether that's an allowed proof of claim?

Secondly, he says, well, we need to know how the funds should be distributed.  Well, that's the function of the plan in this Court.  The debtor believes they're property of the estate.  Mr. Greenberg can't just come in on a contested matter and say, well, we think they're not property of the estate.  Well, actually, that requires an adversary, and that's the proper way to determine whether these are property of the estate.  And in the meantime, nothing should be done with them.

So why remand a matter to a state court when this Court has exclusive jurisdiction to determine what is or is not property of the estate?  I understand his arguments.  He thinks I'm wrong.  I think he's wrong on whether these funds are property of the estate or not.  But the point is that matter won't be decided today and certainly not by the state court. It requires an adversary in the bankruptcy court.

Again, ultimately the debtor wasn't in a hurry to demand a turnover or file an adversary to adjudicate these matters.  Instead, the debtor said hey, we're just going to deal with this in the plan.  They are the largest, you know, asserted creditor.  We dispute that.  But they're at least on

paper the plan will provide a mechanism to deal with this either way.

So I think I totally agree with Your Honor's suggestion to defer this matter.  There's no need to run back into state court on anything.  He's filed his claim.  The plan provides a mechanism to deal with this without litigation.  Why are we going to have a state court running parallel track to this Court on deciding matters that impact this estate?  I just think that's inappropriate.  I think it's an invitation for disaster, too.

Your Honor seized on the issue of are we talking about a general remand of the entire case, including the receivership?  Obviously, Mr. Greenberg had to say no to that.  But what about other aspects here?  Is Mr. Greenberg going to file other motions for sanctions or whatever else in state court?  And are we going to have just an untoward, you know, uncontrolled process in state court when we have a debtor in bankruptcy?

Why would we multiply the costs in having two different parallel proceedings when we have a very simple solution that's up for confirmation in two months, actually less than two months, that provides, I think a very good solution that I think is also very fair to Mr. Greenberg's clients.  It says if you have allowed claims, you get the money.  If you don't, you return it.  I mean, it's as simple as

that.

And for Your Honor's benefit you don't have to decide whether the Murray creditors have allowed claims.  The Nevada Supreme Court and, you know, if the debtor's belief is correct, the Nevada Supreme Court will reverse, then the Nevada state court will adjudicate, you know, if there are any claims left.  So the plan provides for that process.

It's a normal process that allows the state court to play through, the Nevada Supreme Court to play through, in the rules they should, but doesn't allow this to go off the rails in state court like I think Mr. Greenberg is trying to do with, you know, adding to claims and doing any other kind of relief.

And also, quite frankly, even if you filed stuff today, and it's not going to get to hearing before our plan confirmation.  So why not see what the plan does?  I think it provides a very good solution.  It stops all this parallel track litigation that Mr. Greenberg is trying to do.  It keeps things in bankruptcy court where they frankly belong, and it actually cuts down on the litigation costs, if you ask me, and focuses the parties on what's most important right now, which is the plan and avoids too much of a free for all here.

So look, his arguments, it is disputed that the funds in his trust account, which obviously he only has control over, you know, he doesn't have ownership of.  And then the alter ego claims I'm sorry, the Nevada Federal District Court has entered

several decisions on this issue.  At least it's in Nevada law on the issue.  It's very clearly established, notwithstanding his attempts to argue around those as to whether those are property of the estate.

So, Your Honor, I think you have to turn back to the original question I asked, which is what's the purpose of a remand?  What do we need the state court to do right now between now and confirmation?  And the short answer is absolutely nothing.

We don't need it to adjudicate Mr. Greenberg's claim, his proof of claim filed in this bankruptcy case.  We don't need it to decide what is or is not property of the estate, vis-à-vis, the funds in his trust account.  We don't need it to decide the alter egos claims.  Those are property of the estate.  We don't need it to do anything.

So why not let the plan play through that provides, I think, a very good solution to this.  And I would share the comments of Mr. Greenberg and the Court with this is unfortunately a very lengthy litigation saga, and why don't we focus on cutting down on some of that instead of breeding collateral proceedings at the same time we're having a bankruptcy?

So for those reasons, I do believe the matter should be either denied without prejudice or deferred to the confirmation hearing.  And look, Your Honor, if the plan

suddenly is just patently unconfirmable and you find that in May, which I don't think you will, then it may, you know, be time to unleash the dog, so to speak, and say, hey, this debtor had his chance and there's just real problems here.

And I do see a reason for the state court to now weigh in.  We can, you know, revisit the issue at that point, but let the plan at least play through.  That's what bankruptcy is designed to do here, to bring us a real solution, not breed collateral litigation that just multiplies attorneys' fees, introduces jurisdictional issues between Your Honor and the state court.  I think it's a recipe for a jurisdictional nightmare remanding this case back to the state court.

So for those reasons, Your Honor, we request denial, or at least denial without prejudice or deferral to the confirmation hearing.  Thank you.

THE COURT:  Mr. Greenberg, I will let you have a short response.  Go ahead.

MR. GREENBERG:  Yes, Your Honor.  I just want to emphasize to the Court that the defendant -- excuse me, in the state court, the debtor here is not entitled to a stay of the appeal's effects.  I mean, the debtor is certainly entitled to its reorganization rights, and releasing these bond funds is not going to affect its reorganization in any fashion, Your Honor.  They're not property of the debtor's estate.

And the debtor is not allowed to use this Court in

lieu of the state processes for getting a stay of judgment -- excuse me, stay, you know, an appeal bond in lieu of an appeal bond.  Obviously, by filing for relief here, all judgment enforcement, all proceedings that threaten the debtor's property in the state court are stayed.  We understand that.  Nobody disputes that, Your Honor.  That's the law.  But these funds, again, are not property of the debtor's estate.

And the debtor says, well, we have this elegant solution.  You know, we're going to have the plan confirmed, and these funds will be held along with funds paid under the plan until the appeal runs its course in another two years or whatever.  Well, Your Honor, they're not entitled necessarily to that relief under state law in respect to these $300,000 of appeal bond funds.  They already appealed once.  They lost.  It was remanded.  The judgment is for greatly in excess to those funds.

They can plead their case to the state court.  They could have pleaded their case to the state court in December.  They declined to do so.  Instead, they removed it to this Court.  And there's no reason this Court should be making that decision.  It's purely a question of state law.  And I understand they're insisting that this is disputed as to, you know, the status of the funds, but Your Honor has the briefings on this.  You have their explanations as to why these funds are not -- are estate property.

As I told Your Honor, $100,000 of it was voluntarily deposited as an appeal bond.  It doesn't even apply to their arguments otherwise.  So I'm repeating myself, Your Honor.  I don't want to take up Your Honor's time.  I would urge Your Honor to make a decision, because we've already explained this. If Your Honor is going to defer a decision, I respect Your Honor's judgment on this.  Of course I must, and I certainly want Your Honor to be thoughtful about the issues.  This is not a typical situation coming before Your Honor, I'm sure.

THE COURT:  And I appreciate that, and I appreciate the argument.  And I have to say that I am skeptical of the removal propriety.  But that being said, I believe the property of the estate issue is one that would now need -- that would require an adversary proceeding.

I think that in weighing prejudice here, that it would be minimal, given the quick time line that we're on.  I am not inclined at this moment, and I've said this earlier, to be continuing this confirmation hearing date.

I think it's important to everyone to try their very, very best to make sure that they can meet that deadline.  So with that all being said, I am going to continue this matter to May 17th, to be heard in conjunction with the confirmation hearing.

MR. GREENBERG:  I understand, Your Honor.  We, of course, respect your decision.  I appreciate you listening to

our concerns.

THE COURT:  Certainly.  And that would leave the scheduling conference for today, and I think it makes sense at this point to also continue that to the May 17th date.  So we'll go ahead and continue all the matters in the adversary to the confirmation date.  All right.  Is there anything else?

MR. ZIRZOW:  Stay order on the -- I guess it's a deferral of or continuance of the motion, or is that just taken care of by a minute order?

THE COURT:  That will show up in a minute order.  So all of the matters today that were continued would show up as a minute order.

MR. ZIRZOW:  Thank you, Your Honor.

THE COURT:  All right.  Thank you.  We'll go ahead and adjourn the hearing.  Thank you, everyone.

(Proceedings adjourned at 10:47 a.m.)

* * * * *

**C E R T I F I C A T I O N**

I, Lisa Luciano, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my ability.

_____

LISA LUCIANO, AAERT NO.   327                    DATE:   July 19, 2023

ACCESS TRANSCRIPTS, LLC